**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
**ABINGDON DIVISION**

EVA MAE ADKINS, on behalf of herself
and all others similarly situated,
                    Plaintiff,
      v.

EQT PRODUCTION COMPANY, et al.,
                    Defendants.

**MEMORANDUM**
**OPINION**
Case No. 1:11cv00031

      This matter is before the court on Plaintiff's Motion For Leave To File Amended Complaint, (Docket Item No. 97) ("Motion").  The Motion was heard by the undersigned on February 7, 2012. Based on the arguments of the parties and the amici, and for the reasons set out below, the Motion will be granted.

*I. Facts and Procedural History*

      The plaintiff, Eva Mae Adkins, sues on behalf of herself and others similarly situated. Adkins currently sues EQT Production Company, (formerly known as Equitable Production Company and Equitable Resources Energy Company) ("EQT"), and other known and unknown coal estate owners.[1] The Motion before the court seeks

_____

[1]The Complaint listed 13 known coal estate owners: Acin, LLC, Alpha Natural Resources, Inc., Black Diamond Coal Company, LLC, Buckhorn Coal Co., L.L.L.P., Clinchfield Coal Company, Harrison-Wyatt, L.L.C., LBR Holdings, LLC, Levisa Coal Company, Motivation Coal Company, Paramont Coal Corporation, Pyxis Resources Company, Range Resources-Pine Mountain, Inc., and Standard Banner Coal Corporation. The Complaint also listed unknown defendants, John Does A-Z.

to file an Amended Complaint, which no longer lists the coal owners as parties to the case.

The Amended Complaint alleges that Adkins and the class members own certain gas estate interests in coalbed methane, ("CBM"), gas fields in Dickenson, Buchanan, Lee, Russell, Scott and Wise counties in Virginia, and are entitled to payments from EQT as lessors under voluntary leases of their gas estate rights. Adkins states that she is the owner of land and gas interests, including CBM, in Dickenson County.

In 1990, the Virginia General Assembly enacted the Virginia Gas and Oil Act, VA. CODE ANN. §§ 45.1-361.1, et seq., ("Gas Act"). When the Gas Act was enacted, there was uncertainty in Virginia as to whether CBM was owned by those who retained rights to the gas estate/interest or by those who owned the coal estate/interest in the land.  The Gas Act facilitated the drilling and production of CBM, without waiting for the CBM ownership issue to be decided, by allowing for the forced-pooling of CBM interests with conflicting claims of ownership into drilling units. *See* VA. CODE ANN. §§ 45.1-361.21, 45.1-361.22 (2002 Repl. Vol. & West Supp. 2011). In drilling units where there are conflicting claims of ownership of the CBM or where the owners of the CBM are unknown or cannot be located, the Gas Act requires the gas well operators to deposit any funds due to these interests into escrow, to be held pending identification and location of the owner or a final agreement or determination as to ownership of the CBM estate/interest. *See* VA. CODE ANN. §§ 45.1-361.21, 45.1-361.22.

2

Adkins attached her CBM leases to the Complaint and the proposed Amended Complaint. (Docket Item No. 1, Atts. 2-6; Docket Item No. 97, Atts. 2-3.) Each of the leases contains the following language:

> ...[I]n case a dispute arises at any time as to the amount of payments or the proper payee thereof, Lessee may withhold the same, without liability or interest on the money withheld, until the right thereto is determined either by written agreement between the disputing parties or by final order of a court of competent and final jurisdiction, in a suit to be filed and prosecuted to judgment by and between the disputing parties, or in an action of interpleader, instituted by Lessee or its assigns ....

Portions of Adkins's lands are included in voluntarily pooled and forced-pooled drilling units.

EQT attached notices regarding the voluntary pooling of Adkins's lands to its legal arguments on its previously heard motions to dismiss. (Docket Item No. 57, Att. Nos. 1-3, 9-11.)  Each of these notices lists Adkins and/or her deceased husband as owning the oil and gas estate or the gas estate, as opposed to the coal estate or the oil and coal estate, to at least one tract of land covered by each pooling notice. Each of these notices also states:

> The aforesaid leases will participate in the drilling unit as conflicting claimants to the coalbed methane gas to the extent that a potential conflict exists.

The notices are signed by Thomas J. O'Neill, Vice President-Exploration, Equitable Resources Exploration, a division of the Equitable Resources Energy Company, or

3

Lester A. Zitkus, Vice President, Equitable Production Company. Each of the notices also has a Well Location Plat attached to it. These plats reference Adkins and/or her deceased husband as the gas owners on their tracts of lands.

EQT also attached copies of the Board's pooling orders for those portions of Adkins's lands that were included in forced-pooled units. (Docket Item No. 57, Att. Nos. 4-8.) In Board Docket No. 01-0821-0919, EQT filed an application to place a CBM gas well, VC-504484, on a 58.77-acre drilling unit. (Docket Item No. 57, Att. 4.)  Following a hearing, the Board, by Report Of The Board Findings and Order approved on October 2, 2001, granted the application and approved the well and the pooling of all interests in the drilling unit. The order stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

> ... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit .... The Gas Owners or Claimants within Tract 2 of Subject Drilling Unit who have not reached a voluntary agreement to share in the operation of the well represent 8.376668 percent of the gas and oil estate and 0.00 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 57, Att. 4, 2-3, 10.)  Adkins is listed on Exhibit B as an unleased co-

4

owner of the "Gas Estate Only" in Tract 2 of this drilling unit, as opposed to Pittston Company who is listed as the "Coal Estate Only" owner on Tract 2. Exhibit B lists Pittston Company as the "Coal Estate Only" and "Gas Estate Only" owner for Tract 1 of this drilling unit. The Well Location Plat attached to the Board's Order notes that Adkins and her co-owners owned the surface, oil and gas rights to Tract 2 and that Clinchfield Coal Company/Pyxis Resources Company owned the coal rights to Tract 2.

Another portion of Adkins's lands is included in the Board's pooling order in Docket No. 01-0619-0899. In Board Docket No. 01-0619-0899, EQT filed an application to place a CBM gas well, VC-4482, on a 58.77-acre drilling unit. (Docket Item No. 57, Att. 5.)  Following a hearing, the Board, by Report Of The Board Findings and Order approved on October 2, 2001, granted the application and approved the well and the pooling of all interests in the drilling unit. The order also stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

> ... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit.... The Gas Owners or Claimants within Subject Drilling Unit who have not reached a voluntary

agreement to share in the operation of the well represent 9.40 percent of the gas and oil estate and 0 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 57, Att. 5, 2-3, 10.)  Adkins is listed on Exhibit B as the leased owner of the "Gas Estate Only" in Tract 3 of this drilling unit, as opposed to Pittston Company who is listed as the "Coal Estate Only" owner on Tract 3. Exhibit B lists Pittston Company as the "Coal Estate Only" and "Gas Estate Only" owner for Tract 7 of this drilling unit. The Well Location Plat attached to the Board's Order notes that Adkins owned the oil and gas rights to Tract 3 and that Clinchfield Coal Company/Pyxis Resources Company owned the coal rights to Tract 3.

Another portion of Adkins's lands is included in the Board's pooling order in Docket No. 01-1016-0968. In Board Docket No. 01-1016-0968, EQT filed an application to place a CBM gas well, VC-504637, on a 58.77-acre drilling unit. (Docket Item No. 57, Att. 6.)  Following a hearing, the Board, by Report Of The Board Findings and Order approved on November 19, 2001, granted the application and approved the well and the pooling of all interests in the drilling unit. The order also stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

... Set forth in Exhibit B is the name and last know[n] address of each person identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit.... The Gas Owners or Claimants within Subject Drilling Unit who have not reached a voluntary agreement to share in the operation of the well represent 1.075 percent of the gas and oil estate and 0 percent of the coal estate in Subject Drilling Unit....

(Docket Item No. 57, Att. 6, 2-3, 10.)  Adkins is listed on Exhibit B as the leased owner of the "Gas Estate Only" in Tract 2 of this drilling unit, as opposed to Pittston Company who is listed as the "Coal Estate Only" owner on Tract 2. Exhibit B lists Pittston Company as the "Coal Estate Only" and "Gas Estate Only" owner for Tract 5 of this drilling unit. The Well Location Plat attached to the Board's Order notes that Adkins owned the oil and gas rights to Tract 2 and that Clinchfield Coal Company/Pyxis Resources Company owned the coal rights to Tract 2.

Another portion of Adkins's lands is included in the Board's pooling order in Docket No. VGOB-04/08/17-1325. In Board Docket No. VGOB-04/08/17-1325, EQT filed an application to place a CBM gas well, VC-505241, on a 58.77-acre drilling unit. (Docket Item No. 57, Att. 7.)  Following a hearing, the Board, by Report Of The Board Findings and Order approved on April 4, 2005, granted the application and approved the well and the pooling of all interests in the drilling unit. The order also stated in part:

... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person

7

identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....

　　　... Set forth in Exhibit B-3 is the name and last know[n] address of each Owner or Claimant identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas in the Subject Drilling Unit ... who has not, in writing, leased to [EQT] or the Unit Operator or agreed to voluntarily pool his interests in Subject Drilling Unit…. The interests of the Respondents listed in Exhibit B-3 comprise 16.05654492 … percent of the oil and gas interests/claims in and to Coalbed Methane Gas and 0 … percent of the coal interests/claims in and to Coalbed Methane Gas in Subject Drilling Unit….

(Docket Item No. 57, Att. 7, 2-3, 10.)  Adkins is listed on Exhibit B-3 as the leased owner of the "Gas Estate Only" in Tract 1 of this drilling unit.  The Board's Order also has an Exhibit E attached.  The Order states that Exhibit E sets out the conflicting gas owners/claimants in the drilling unit.  Exhibit E also lists Adkins as the leased owner of the "Gas Estate Only" in Tract 1 of this drilling Unit, as opposed to Pine Mountain Oil & Gas, Inc., who is listed on Exhibit E as the "Coal Estate Only" owner on Tract 1. Adkins is also listed as an unleased co-owner of the "Gas Estate Only" in Tract 3, as opposed to Pine Mountain Oil & Gas, Inc., who is listed as the "Coal Estate Only" owner on Tract 3. The Well Location Plat attached to the Board's Order notes that Adkins owned the surface, oil and gas rights to Tract 1, that Dickenson-Russell Coal Company, LLC/Alpha Land & Reserves, LLC/ACIN,LLC/WBRD, LLC owned the coal rights to Tract 1 and that Pine Mountain Oil & Gas, Inc., owned the CBM rights to Tract 1. The Well Location Plat also notes that Adkins and her co-owners owned the surface, oil and gas rights to Tract 3, that Dickenson-Russell Coal

Company, LLC/Alpha Land & Reserves, LLC/ACIN,LLC/WBRD, LLC owned the coal rights to Tract 3 and that Pine Mountain Oil & Gas, Inc., owned the CBM rights to Tract 3.

Another portion of Adkins's lands is included in the Board's pooling order in Docket No. VGOB-04/11/16-1363. In Board Docket No. VGOB-04/11/16-1363, EQT filed an application to place a CBM gas well, VC-504248, on a 58.77-acre drilling unit. (Docket Item No. 57, Att. 8.)  Following a hearing, the Board, by Report Of The Board Findings and Order approved on April 4, 2005, granted the application and approved the well and the pooling of all interests in the drilling unit. The order also stated in part:

> ... [T]he Board ... finds that the Applicant has (1) exercised due diligence in conducting a meaningful search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner, i.e., person identified by [EQT] as having ("Owner") or claiming ("Claimant") the rights to Coalbed Methane Gas ... in the Subject Drilling Unit... and (3) that the persons set forth in Exhibit B-3 hereto have been identified by [EQT] as persons who may be Owners or Claimants of Coalbed Methane Gas interests ... in the Subject Drilling Unit....
>
> ... Set forth in Exhibit B-3 is the name and last known address of each Owner or Claimant identified by [EQT] as having or claiming an interest in the Coalbed Methane Gas  … in Subject Drilling Unit.... who has not, in writing, leased to [EQT] … or agreed to voluntarily pool his interests in Subject Drilling Unit for its development. The interests of the Respondents listed in Exhibit B-3 comprise 10.91841054 … percent of the oil and gas interests/claims in and to Coalbed Methane Gas and 0.0 … percent of the coal interests/claims in and to Coalbed Methane Gas in Subject Drilling Unit....

(Docket Item No. 57, Att. 8, 2-3, 10.)  Adkins is listed on Exhibit B-3 as an unleased co-owner of the "Gas Estate Only" in Tract 3 of this drilling unit. The Board's Order also has an Exhibit E attached. The Order states that Exhibit E sets out the conflicting gas owners/claimants in the drilling unit. Exhibit E also lists Adkins as an unleased co-owner of the "Gas Estate Only" in Tract 3 of this drilling unit, as opposed to Pine Mountain Oil & Gas, Inc., who is listed as the "Coal Estate Only" owner in Tract 3. The Well Location Plat attached to the Board's Order notes that Adkins and her co-owners owned the surface, oil and gas rights to Tract 3, that Dickenson-Russell Coal Company, LLC/Alpha Land & Reserves, LLC/ACIN,LLC/WBRD, LLC owned the coal rights to Tract 3 and that Pine Mountain Oil & Gas, Inc., owned the CBM rights to Tract 3.

Each of the Board's orders for these five drilling units specifically found that "the notices given herein satisfy all statutory requirements, Board rule requirements and the minimum standards of state due process."

Plaintiff's counsel insist that the only significant difference in the current Complaint and in the proposed Amended Complaint is contained in the request for declaratory judgment contained in Count I. In the Amended Complaint, Adkins seeks, on behalf of herself and the class members, a judgment pursuant to 28 U.S.C. § 2201 against EQT only, declaring that:

> a.   Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM Unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM Unit tract;

b.   Because a conveyance, reservation, or exception of coal does not include CBM as a matter of law, Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to those CBM Unit tracts as to which EQT has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which EQT has further asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners/lessors) on the one hand, and persons identified by EQT as owning coal estate interests and not gas estate interests on the other hand;

c.   All royalty payments in the Board's escrow account that are attributable to Plaintiff's and the Class Members' respective CBM interests and that have been deposited into the escrow account due to alleged conflicting claims of CBM ownership with persons identified by EQT as owning coal estate interests and not gas interests, must be released from the Board's escrow account and paid over to Plaintiff and the Class Members; [and]

d.   All royalties attributable to Plaintiff's and the Class Members' CBM interests that were not deposited by EQT into the Board's escrow account but have been "suspended" or otherwise held by EQT and not paid to Plaintiff and the Class Members due to alleged conflicting claims of CBM ownership with persons identified by EQT as owning coal estate interests and not gas interests, must be paid by EQT to Plaintiff and the Class Members....

(Docket Item No. 97, Att. 1, ("Amended Complaint"), 31-32.)  As in the current Complaint, the proposed Amended Complaint also asserts claims against EQT for an accounting, breach of contract, conversion, negligence, breach of fiduciary duties, unjust enrichment, punitive damages and attorneys' fees.

11

This court previously granted EQT's motion and dismissed Adkins's claims for breach of contract based on the assertion that there are no conflicting claims as to the Virginia Gas and Oil Board-ordered forced-pooled drilling units, for negligence in EQT's voluntary undertaking of identifying CBM interests, for negligence in EQT's duties as a unit operator, for breach of fiduciary duty as to those who had entered into leases in voluntary pools and for unjust enrichment. Adkins's counsel have agreed that the court's prior rulings on these issues would control and prevent the need for EQT's counsel to file its motions to dismiss these claims once again.

EQT and the amici oppose the Motion.  As stated above, the Motion was heard before the undersigned on February 7, 2012, and is ripe for decision.

## II. Analysis

Once 21 days have passed since the filing of a responsive pleading, a party may amend a pleading "only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). However, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  While the decision to allow amendment is within the discretion of the court, amendment of a pleading, including the complaint, should be denied only when it would produce undue delay, would unduly prejudice the opposing party or would be futile. *See Island Creek Coal Co. v. Lake Shore, Inc.*, 832 F.2d 274, 279 (4th Cir. 1987).

In this case, Adkins must have leave of the court to file her Amended Complaint. EQT and the amici do not argue that the proposed amendment should be

denied based on undue delay or undue prejudice to any party. Instead, the opposing parties argue that the court should deny the Motion because the amendment would be futile.  In particular, the opposing parties argue that the coal owners are indispensable parties and that the relief requested by Adkins in the Amended Complaint cannot be granted as a matter of law or without the coal owners being before the court.

In the Amended Complaint, Adkins requests entry of judgment declaring that no CBM ownership conflict exists as a matter of Virginia law as between a person owning gas estate interests in a CBM unit tract, and a different person owning coal estate interests and *not* gas estate interests in the CBM unit tract. Plaintiff's counsel argue that this issue of law was decided in the Virginia Supreme Court's decision in *Harrison-Wyatt, LLC v. Ratliff*, 593 S.E.2d 234, 235, 238 (Va. 2004), and that the court's holding in *Harrison-Wyatt* was later codified by the Virginia General Assembly in Virginia Code § 45.1-361.21:1. Opposing counsel argue that the court's rulings in *Harrison-Wyatt* decided only the specific title dispute between the parties of that case and nothing more.

This court has considered at length the *Harrison-Wyatt* decision and its impact on this and the other related CBM cases currently before it. To fully understand the extent of the Virginia Supreme Court's ruling in the case, the court also has considered the original Circuit Court decision, as well as the Circuit Court author's subsequent interpretation of that decision. *See Ratliff v. Harrison-Wyatt, LLC,* Chancery No. 187-00, slip op. (Buchanan County Circuit Court, Dec. 6, 2002); *Pobst, et al. v. Garden Realty Corp.*, No. 486-08, slip op. (Buchanan County Circuit Court, Oct. 20, 2011).

13

In *Ratliff*, Circuit Court Judge Keary R. Williams held "that a grant of coal rights does not include title to the CBM absent an express grant of CBM, natural gases, or minerals in general...." Chancery No. 187-00, slip op. at 8. According to Judge Williams's opinion, the issue before the court in *Ratliff* was "whether title to the CBM [on the tracts at issue] passed to the Defendants along with the coal pursuant to the Deeds, or whether ownership remain[ed] with the surface owner Plaintiffs." Chancery No. 187-00, slip op. at 1. The deeds at issue in *Ratliff* only referenced coal and made no mention of the grant of any other mineral or gas in any form. *See* Chancery No. 187-00, slip op. at 6. Judge Williams, persuaded in large part by the United States Supreme Court's reasoning in *Amoco Prod. Co. v. S. Ute Tribe*, 526 U.S. 865 (1999), held that such a reference was not ambiguous, but was clear, and conveyed rights to coal only and not the CBM contained within the coal. *See Ratliff*, Chancery No. 187-00, slip op. at 6.

On appeal, the Virginia Supreme Court upheld the Circuit Court's rulings that CBM was a separate, severable mineral estate and that a grant of coal rights did not include the rights to CBM. *See Harrison-Wyatt*, 593 S.E.2d at 236, 238. It is important to note that the Virginia Supreme Court's analysis, while sparse, did not focus on the intent of the parties to the deeds at issue. *See* S. Ryan White, *Who Owns Coalbed Methane in West Virginia?*, 107 W. Va. L. Rev. 603, 619 (2005). Instead, the court focused on the clear meaning of the term "coal" and that CBM is not a part of coal. "CBM ... is a gas that exists freely in the coal seam and is a distinct mineral estate." *Harrison-Wyatt*, 593 S.E.2d at 238.

14

At least one other federal district court has cited *Harrison-Wyatt* for the proposition that the Virginia court has decided that the gas estate owners for a tract of land, and not the coal estate owners, have the exclusive right to the CBM attributable to that tract. *See Michael F. Geiger, LLC v. United States*, 456 F. Supp. 2d 885, 888 (W.D. Ky. 2006). The Supreme Court of Kansas also has cited *Harrison-Wyatt* for the proposition that the Virginia court held that "the ownership of coal does not include the ownership of CBM." *Cent. Natural Res., Inc., v. Davis Operating Co.*, 201 P.3d 680, 686 (Kan. 2009). Further, learned sources have recognized that *Harrison-Wyatt* held that coal owners do not own the CBM in Virginia. *See* 58 C.J.S. *Mines and Minerals* § 209 (2012); LoValerie Mullins, *The Equity Illusion Of Surface Ownership In Coalbed Methane Gas; The Rise Of Mutual Simultaneous Rights In Mineral Law And The Resulting Need For Dispute Resolution In Split Estate Relations*, 16 Mo. Envtl. L. & Pol'y Rev. 109 (2009).

Perhaps even more persuasive than these sources, however, is how the author of the *Ratliff* opinion, Judge Williams, has interpreted the decision. In *Pobst, et al. v. Garden Realty Corp.*, No. 486-08, slip op. at 2-3, Judge Williams, in addressing whether he could decide the issue of the ownership of CBM in that case as a matter of law, wrote:

> In *Harrison-Wyatt* ... the Supreme Court of Virginia stated, "the grant of coal rights does not include rights to CBM absent an express grant of coalbed methane, natural gas, or minerals in general." This rule was later codified by Va. Code Ann. § 45.1-361.21:1 and states, in part, "a conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas...."
> ... [T]he Defendant asserts that the Court misapprehends the precedent set forth in *Harrison-Wyatt* and broadens the scope of the Supreme Court of Virginia's decision by ... deciding the ownership of

the CBM as a matter of law....

　　　　... The law in Virginia is settled on the issue of CBM ownership when there is a conveyance, reservation, or exception of coal. ... "[A] conveyance, reservation, or exception of coal shall not be deemed to include coalbed methane gas...."

Based on the above, I am persuaded that the Virginia Supreme Court's decision in *Harrison-Wyatt* held that, as a matter of law, a conveyance, reservation or exception of coal does not include the CBM. That being said, I find that the Motion would not be futile insofar as the Amended Complaint seeks a ruling that, as a matter of law, a conveyance, reservation, or exception of coal does not include CBM and, therefore, that no CBM ownership conflict exists as a matter of law as between (i) a person owning gas estate interests in a CBM unit tract, and (ii) a different person owning coal estate interests and not gas estate interests in the CBM unit tract. That, however, is not the only relief requested by the Amended Complaint.

The Amended Complaint also seeks entry of judgment declaring that:

　　　　... Plaintiff and the Class Members are entitled to receive the CBM proceeds that are attributable/allocated to their respective interests in those CBM Unit tracts as to which EQT has determined that Plaintiff and the Class Members are gas estate interest owners, but as to which EQT has asserted that there are conflicting claims of CBM ownership between Plaintiff and the Class Members (as gas estate interest owners) on the one hand, and persons identified by EQT as owning coal estate interests and not gas estate interests on the other hand.

(Amended Complaint at 17.)  As stated above, the Amended Complaint asserts that entry of such a judgment is appropriate without naming the coal owners as parties to

16

this case. In deciding whether this amendment would be futile, the court must examine whether the relief requested can be granted and whether it can be granted in the absence of the coal owners.  Based on my review of the information currently before the court, I find that it is possible that the relief requested can be granted in the absence of the coal owners, and, therefore, I find that the amendment would not be futile.

Again, the Amended Complaint seeks judgment that, as between the gas estate owners and the coal estate *only* owners, the gas estate owners are entitled to the CBM proceeds. Under *Harrison-Wyatt*, this is correct. The Amended Complaint further requests that the court enter judgment that Adkins and the class members are entitled to any CBM royalties withheld by EQT or escrowed by EQT pursuant to Board orders in drilling units where EQT asserted that there were conflicting claims of ownership to the CBM between gas estate owners on the one hand and coal estate only owners on the other hand.

EQT and the amici argue that entry of such a judgment is inappropriate unless the coal owners of each of these drilling units are first made parties to this case.  EQT and the amici argue that the coal owners are indispensable parties, without whom complete relief cannot be granted.  EQT and the amici further argue that the conflicting claims in these drilling units are not conflicts that can be resolved as a matter of law, but will require proof of the chain of title with regard to the tracts contained in each of these drilling units.

A district court should refuse to allow an amendment based on futility only

17

when it is not possible for the court to award the relief requested. In *Foman v. Davis*, 371 U.S. 178, 182 (1962), the United States Supreme Court explained that, in considering a motion to amend a complaint, "[i]f the underlying facts or circumstances relied upon by a plaintiff *may be* a proper subject of relief, [the plaintiff] ought to be afforded an opportunity to test his claim on the merits." (Emphasis added.)  Further, an amendment is not futile unless the relief sought cannot be granted as a matter of law. *See Ward Elecs. Serv., Inc. v. First Commercial Bank*, 819 F.2d 496, 497 (4th Cir. 1987); *see also Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349 (4th Cir. 1991) ("amendment properly could have been found futile only if, as a matter of law, it failed to state a claim"); *Schieszler v. Ferrum College*, 236 F. Supp. 2d 602, 612 (W.D. Va. 2002) (motion for leave to file amended complaint not futile if amended complaint states a claim).

Thus, to deny the Motion as futile in this case, this court must find that Count I of the Amended Complaint fails to state a claim upon which relief may be granted. In determining whether a claim for relief is adequately stated, the court is not bound by the legal conclusions contained in a complaint, but the court must accept all well-pleaded factual allegations as true. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The Amended Complaint alleges that Adkins and the class members own the gas estate interests in the tracts of land contained in the drilling units at issue.  The Amended Complaint further alleges that Adkins and the class members have been denied CBM proceeds in two ways. The Amended Complaint alleges that, in drilling units where EQT had voluntary leases from all the gas and coal owners – where the interests were voluntarily pooled, EQT withheld or suspended payment of any royalties because of conflicting claims between the gas and coal interest only owners.

18

These units were not subject to Board orders, and no funds were paid into escrow accounts for these units. In drilling units where EQT did not obtain voluntary leases from all gas and coal owners, the Amended Complaint alleges that, EQT sought and received, orders from the Board establishing force-pooled drilling units. In these units, the Amended Complaint alleges that EQT paid royalties into Board-ordered escrow accounts.

The Amended Complaint alleges that whenever EQT prepared an application for a forced-pooled unit, EQT conducted extensive title searches to identify all of the potential owners of the CBM underlying each tract in each of its proposed drilling units. It further alleges that, based on these title searches, EQT filed sworn applications with the Board asserting that Adkins and the class members owned the gas estate interests in their respective tracts of land. It further alleges that EQT's sworn applications and sworn testimony before the Board asserted that the gas estate owners' claims to the CBM in these tracts was in conflict with others who EQT identified as owning the coal estate in these tracts and not the gas estate. It alleges that, if a coal estate owner also owned the gas estate, EQT listed that owner as owning both. The Amended Complaint alleges that, simultaneously with the filing of these applications, EQT was required to send a copy of the applications to all of the listed interest owners. The Amended Complaint further alleges that the Board adopted EQT's findings as to the existence of conflicting claims and who held those claims in its pooling orders.

With regard to the voluntarily pooled units, the Amended Complaint also alleges that EQT conducted extensive title searches to identify all of the potential

owners of the CBM underlying each tract in these drilling units. It further alleges that, based on these title searches, EQT determined that Adkins and the class members owned the gas estate interests in their respective tracts of land.

The Gas Act and the regulations adopted by the Board pursuant to the Gas Act support Adkins's allegations in Count I of the Amended Complaint with regard to the forced-pooled units. The Gas Act requires that an applicant seeking to establish a drilling unit must provide notice of the application to each "gas or oil owner, coal owner, or mineral owner having an interest underlying the tract." VA. CODE ANN. § 45.1-361.19 (Repl. Vol. 2002 & West Supp. 2011.) The regulations require that each application to establish a drilling unit must be accompanied by an affidavit "demonstrating that due diligence was used to locate and serve" each gas or oil owner, coal owner or mineral owner having an interest in the tracts which are the subject of the application. *See* 4 VA. ADMIN. CODE § 25-160-50(10) (2011). Furthermore, the regulations require that this notice of hearing must contain a "description of the interest or claim" of the person being notified. *See* 4 VA. ADMIN. CODE § 25-160-40(B)(7) (2011).  The regulations also require that, where there are conflicting claims of ownership of the CBM, the application "shall contain a description of the conflicting ownership claims." 4 VA. ADMIN. CODE § 25-160-80 (2011).

While this case is not before the court at this stage of the proceedings on an issue of fact, there are facts before the court to support Adkins's allegations with regard to both the forced-pooled and the voluntarily pooled units. The certified copies of the Board's orders at issue in this case show that each application alleged, and the Board found, that EQT had "exercised due diligence in conducting a meaningful

20

search of reasonably available sources to determine the identity and whereabouts of each gas and oil owner, coal owner, or mineral owner and/or potential owner...." Furthermore, the orders found that EQT had satisfied its statutory and regulatory notice obligations. Also, the exhibit forms stated that the conflict that existed in these drilling units existed between those who owned the "Coal Estate Only" and those who owned the "Gas Estate Only." If an owner owned both the gas and coal rights, that owner was listed under both estates on these exhibit forms. With regard to the voluntarily pooled units, the notices EQT previously filed stated that EQT had determined that Adkins owned the gas estate as opposed to owners of the coal estate. Whether there is any evidence to the contrary to be developed, the court cannot determine at this stage of the proceedings. The court also cannot, however, determine that Count I of the Amended Complaint fails to state a claim for relief.

EQT and the amici also argue that the Motion is futile because it seeks to dismiss the coal owners who are required parties. A person is a "required party" under Rule 19(a) if he "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest...." FED. R. CIV. P. 19(a)(1)(B). EQT and the amici argue that the coal owners are required parties because Adkins seeks entry of judgment that they have no claim to ownership of the CBM. Based on the court's interpretation of the holding of *Harrison-Wyatt* set out above, any coal owner who possesses coal rights *only* in a tract of land does not have an interest in the CBM associated with that tract. As stated above, the Amended Complaint alleges that EQT asserted in its applications, and the Board adopted in its findings, that the only conflict in these forced-pooled drilling units was between those

21

who owned the gas interests and those who owned the coal interest only. The Amended Complaint also alleges that the only reason EQT withheld payment of royalties from voluntarily pooled drilling units is because of this conflict between gas owners and coal only owners. As stated above, *Harrison-Wyatt* resolved this conflict, and any party to these drilling units who owns the coal estate only has no interest in the CBM or the revenues generated by the production of the CBM. The court recognizes that, whether these coal owners owned coal rights *only* may be a contested question of fact. That, however, cannot be determined at this stage.

For the above-stated reasons, the court cannot determine, as a matter of law, that "coal owners only" are required parties for the relief sought by the Amended Complaint. Therefore, the court cannot find that amending the complaint to dismiss them would be futile.

The court further holds that there is no merit to EQT's argument that the proposed amendment would be an improper collateral attack on the Board's pooling orders. The Amended Complaint simply seeks a ruling that Adkins and the proposed class members are entitled to the escrowed funds from the forced-pooled CBM wells. The Gas Act at § 45.1-361.22(5) specifically requires such a ruling before the Board may order the release of escrowed funds.

### III. Conclusion

Based on the above-stated reasons, the Motion will be granted. An appropriate order will be entered.

22

ENTERED this 28th day of March, 2012.

/s/ *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE

23