PUBLISHED

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| ROBERT ADAIR, on behalf of himself and all others similarly situated, Plaintiffs, | ) ) ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-00037 |
| | ) | |
| EQT PRODUCTION COMPANY, Defendant. | ) ) ) | |

| | | |
|---|---|---|
| EVA MAE ADKINS, on behalf of herself and all others similarly situated, Plaintiffs, | ) ) ) | |
| | ) | |
| v. | ) | Case No. 1:10-cv-00041 |
| | ) | |
| EQT PRODUCTION COMPANY, Defendant. | ) ) ) | |

| | | |
|---|---|---|
| EVA MAE ADKINS, on behalf of herself and all others similarly situated, Plaintiffs, | ) ) ) | |
| | ) | |
| v. | ) | Case No. 1:11-cv-00031 |
| | ) | |
| EQT PRODUCTION COMPANY, *et al.,* Defendants. | ) ) ) | |

## MEMORANDUM OPINION

These three cases are before the court on Plaintiffs' Motion To Compel Kevin West Emails, which was filed in each of the cases. (1:10cv37 – Docket Item No. 400; 1:10cv41 – Docket Item No. 223; 1:11cv31 – Docket Item No. 189) (collectively, "Motions"). The Motions are ripe and ready for decision, and none of the parties have requested oral argument. Based on the reasoning set forth below, the Motions will be granted in part and taken under advisement in part.

### I. Facts

The plaintiffs, Robert Adair and Eva Mae Adkins, sue EQT Production Company, ("EQT Production"),[1] seeking payment of royalties and other relief as lessors of coal bed methane, ("CBM"), taken from CBM wells operated by EQT Production in Southwest Virginia. The Motions seek to compel the production of certain emails to or from Kevin West. The specific emails withheld from production are listed on the Defendant EQT Production Company's Second Amended Fourth Privilege Log, ("Privilege Log"). (1:10cv37 – Docket Item No. 401, Att. 1; 1:10cv41 – Docket Item No. 224, Att. 1; 1:11cv31 – Docket Item No. 190, Att. 1.) Plaintiffs seek to compel the emails listed at entry Nos. 182, 184-202, 204-207, 212-265 on the Privilege Log. Each of these Privilege Log entries asserts that the documents are protected from production by the attorney-client privilege and the work-product doctrine.

According to West's affidavits, West is licensed to practice law in Kentucky and has served in various capacities with EQT Production and affiliated entities. In

---

[1] In one of the cases, 1:11cv31, there are additional defendants, but those defendants are not involved in this discovery dispute.

particular, West served as Vice-President and General Counsel of EQT Production from June 2007 to August 2008. From August 2008 to March 2009, West served as Vice-President of Legislative and Regulatory Affairs of EQT Production. From March 2009 to September 2011, West served as Managing Director of External Affairs for EQT Production's parent company, EQT. From September 2011 to February 2012, West served as Deputy General Counsel for EQT.  In each of these roles, West reported to EQT's General Counsel.

According to West, from March 2009 until he left EQT in February 2012, he "was designated as EQT's company spokesperson for any matter that might have legal implications."  West also stated that he continued to be consulted with regard to legal matters in each of his roles.  As Managing Director of External Affairs for EQT, West managed the Corporate Communications, Community Relations and Government Affairs departments.  West stated that, during his time as Managing Director of External Affairs, "a member of EQT's legal staff was customarily included in any matter involving an EQT business unit or functional department which could have legal implications. However, the majority of time when Corporate Communications, Community Relations or Government Affairs departments had such an issue, members of the legal staff were not included because of my training and experience as an attorney."

West's affidavits do not address any of the specific communications withheld from production. West has stated that, during January and February of 2009, he requested information from EQT Production's accounting department to support EQT's position on proposed Virginia legislation related to the deduction of post-production expenses in calculating royalties. "…[B]ecause debate on the issue focused upon the interpretation of legal rulings on the deduction of post-production

expenses from other states and a Virginia Attorney General's opinion on the matter, it was necessary that I become involved."

West stated that, he also coordinated the response to an inquiry made in October 2009 by Bristol Herald Courier newspaper reporter Daniel Gilbert "because the matter involved legal issues related to royalty calculation and payment and the potential for claims or litigation. … In formulating a response, it was necessary for me to communicate with several EQT Production employees who possessed information necessary for the response." According to West, "The inquiries from Daniel Gilbert regarding unpaid royalties presented legal issues, and EQT anticipated that litigation could ensue. Therefore, it was important to have a lawyer coordinate EQT's response to such inquiries. In my view, I was acting primarily in a legal capacity in investigating and formulating EQT's response to Mr. Gilbert."

West also stated that, during late 2009 and early 2010, he was responsible for coordinating and communicating EQT Production's position with regard to a Virginia Gas and Oil Board, ("Board"), proposal to require uniform royalty reporting requirements for royalty payments under Board orders. "In formulating and communicating EQT Production's position with regard to the proposal, it was necessary for me to communicate with EQT Production employees who possessed relevant substantive knowledge or documentation." West also said that, when EQT Production received inquiries regarding royalty calculations on Virginia production, he was generally consulted "because of [his] experience in dealing with royalty calculation issues."

*II. Analysis*

Under the Federal Rules of Civil Procedure, any nonprivileged information that is relevant to the subject matter of the action is subject to discovery. *See* FED. R. CIV. P. 26(b)(1). EQT Production asserts that the documents it has withheld from discovery are protected by the attorney-client privilege and the work-product doctrine. Because the remaining claims in these cases are state law claims before the court under both pendent and diversity jurisdiction, *see* 28 U.S.C.A. §§ 1332(d)(2), 1367(a), the determination of whether the documents at issue are protected from production by a claim of privilege is governed by Virginia law. *See* FED. R. EVID. 501.

Virginia law recognizes that "[c]onfidential communications between attorney and client made because of that relationship and concerning the subject matter of the attorney's employment are privileged from disclosure…." *Commonwealth v. Edwards*, 370 S.E.2d 296, 301 (Va. 1988) (internal quotation marks and citations omitted). Since the privilege is an exception to the general rule of disclosure -- "an obstacle to investigation of the truth" -- it is to be strictly construed. *Edwards*, 370 S.E.2d at 301. Furthermore, the attorney-client privilege does not attach to a document merely because a client delivers it to an attorney or vice versa. *See Va. Elec. & Power Co. v. Westmoreland-LG&E Partners*, 526 S.E.2d 750, 755 (Va. 2000) For the privilege to apply, the communication must be made for the purpose of "procuring or providing legal advice." *SNC-Lavalin Am., Inc. v. Alliant Techsystems, Inc.*, 2011 WL 4716225, at *1 (W.D.Va. Oct. 6, 2011); *see also Burton v. R.J. Reynolds Tobacco, Co., Inc.*, 175 F.R.D. 321, 327 (D. Kan. 1997) ("Not every communication between an attorney and client is privileged,

only confidential communications which involve the requesting or giving of legal advice").

While the attorney-client privilege is available to corporations, *see Owens-Corning Fiberglas Corp. v. Watson*, 413 S.E.2d 630, 638 (Va. 1992) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389-90 (1981)), the determination of whether the attorney-client privilege applies to protect a document from production becomes more difficult when the sender or recipient of that document is in-house counsel for a corporate entity. *See, e.g., United States v. United Shoe Mach. Corp.*, 89 F. Supp. 357 (D. Mass. 1950); *ABB Kent-Taylor, Inc. v. Stallings & Co., Inc.*, 172 F.R.D. 53, 55 (W.D.N.Y. 1996). As is the case here, attorneys employed by corporations serve in many roles, some of which have little to do with being an attorney. Because of this, "courts and commentators alike have frequently expressed concern that the privilege may be used by corporations to create a large 'zone of secrecy' for communications whose probative value could be important to a fair resolution of disputes." *Rush v. Sunrise Sr. Living, Inc.,* 2008 WL 1926766 (Va. Cir. Ct. Feb. 12, 2008) (citations omitted). To prevent this, the privilege should not be applied to protect any and all documents routinely routed through corporate counsel for little, if any, legal purpose. In such situations, "'the privilege should be strictly construed to apply only where necessary to protect its underlying policy aims.'" *Rush*, 2008 WL 1926766 (quoting *Edwards*, 370 S.E.2d at 301). Courts should "'cautiously and narrowly' apply the privilege in cases involving corporate staff counsel 'lest the mere participation of an attorney be used to seal off disclosure.'" *ABB Kent-Taylor, Inc.,* 172 F.R.D. at 55 (internal citations omitted).

Accordingly, where a communication neither requests nor expresses legal advice, but rather involves the soliciting or giving of business advice, it is not protected by the privilege. *See United Shoe Mach. Corp.*, 89 F. Supp. at 359. The communication must be with an attorney for the express purpose of securing legal advice. *See Fisher v. United States*, 425 U.S. 391, 403 (1976). It is also true, however, that "[t]he mere fact that business considerations are weighed in the rendering of legal advice does not vitiate the attorney-client privilege." *Coleman v. Am. Broadcasting Cos., Inc.,* 106 F.R.D. 201, 206 (D.D.C. 1985). "For the attorney-client privilege to apply, the communication 'must be primarily or predominately of a legal character.'" *ABB Kent-Taylor, Inc.,* 172 F.R.D. at 55 (citations omitted); *see also Henson v. Wyeth Labs., Inc.*, 118 F.R.D. 584, 587 (W.D.Va. 1987) (communication must be for the primary purpose of soliciting legal, rather than business, advice).

The burden is on the proponent of the privilege "to establish that the attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived." *Edwards*, 370 S.E.2d at 301; *see also United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982). The party withholding a document under a claim of privilege "must specifically and factually support its claim of privilege 'by way of evidence, not just argument.'" *SNC-Lavalin Am., Inc.*, 2011 WL 4716225, at *2 (quoting *Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust*, 230 F.R.D. 398, 410 (D. Md. 2005)). "Parties seeking to challenge a claim of privilege have sparse information at their disposal. Because they do not actually have access to the privileged documents, they must rely on the opposing party's description of them in the privilege log. 'Accordingly, the descriptions in the log must satisfy the claiming party's burden.'" *ePlus Inc. v. Lawson Software, Inc.*, 280 F.R.D. 247, 252

(E.D.Va. 2012) (quoting *Rambus, Inc. v. Infineon Techs. AG*, 220 F.R.D. 264, 272 (E.D.Va. 2004)).

In consideration of the claim of privilege raised in this case, the court has the Privilege Log and West's affidavits before it.  Based on the court's review of these, the court finds that EQT Production has failed to meet its burden to establish that all but five of these documents were prepared primarily for the purpose of giving and receiving legal advice.  The documents withheld from production can be placed into four categories. According to the Privilege Log, a number of the documents were pertaining to responding to requests for information from the Virginia Department of Mines, Minerals and Energy, (Nos. 182, 184-188, 255-262, 264). Others were pertaining to Reporter Gilbert's request for information, (Nos. 189-198, 239-240). Others pertain to "escrow issues," "escrow summaries," interest rates on escrow payments or disbursements from escrow, but make no reference to any inquiries, (Nos. 202, 204-207, 212-15, 217, 220-221, 227-238, 245-252).  The final category of documents includes emails to schedule telephone calls and emails acknowledging other emails. (Nos. 199-201, 218, 219, 222-224, 226, 241).  None of these entries makes any reference to seeking or providing legal advice. Furthermore, it is important to note that the Privilege Log does include entries that clearly state that the documents relate to the giving or receiving of legal advice.  For instance, No. 266, which is not at issue on the Motions, states: "Requesting Legal Opinion on Mineral Rights Classification." *See also* Nos. 180, 267-269, all of which are not at issue on the Motions.

West's affidavits add little evidence to support the claimed privilege.  West stated that he has reviewed the withheld emails.  West also stated that he "consider[ed] the emails to be protected by the attorney-client privilege or by the

work[-]product doctrine." That, however, is the court's determination to make. West also has stated: "In my view, I was acting primarily in a legal capacity in investigating and formulating EQT's response to Mr. Gilbert." Such conclusory statements, however, do not meet the proponent's burden. Again, it is important to note what West's affidavits do not contain. West did not offer any evidence that these emails related to requests for or the rendering of legal advice. Instead, West stated only that the inquiries "presented legal issues, and EQT anticipated that litigation could ensue." It is likely this could be said of any of West's work for EQT Production.

Based on the court's review of the Privilege Log, only five of the entries for contested documents provide information sufficient to warrant the court's in camera review of the documents to determine if they are protected by the attorney-client privilege. Entry No. 216 references information received from outside counsel. Entry No. 225 states that it discusses "advice" from West. Entry No. 242 states that it poses an issue about "liability for interest on internal suspense [accounts]." Entry Nos. 243 and 244 respond to No. 242 and may be privileged if No. 242 is privileged. I will order the production of these documents for review in camera.

EQT Production also asserts that the documents at issue on the Motions are protected from production by the work-product doctrine. Trial preparation and work-product materials are protected under Federal Rules of Civil Procedure Rule 26(b)(3), which states: "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative...." Nonetheless, "...not every document

generated by an attorney is protected by work product immunity." *Burton*, 175 F.R.D. at 327.

> To be protected by the work-product doctrine, a document

> …must be prepared *because* of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation. Thus, … materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3).

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co., Inc.*, 967 F.2d 980, 984 (4th Cir 1992) (emphasis in original). "This 'because of' standard was 'designed to help district courts determine the driving force behind the preparation of the work product' and distinguish between that which is created in anticipation of litigation and that which is created in the ordinary course of business." *Botkin v. Donegal Mut. Ins. Co.,* 2011 WL 2447939, at *2 (W.D.Va. June 15, 2011) (quoting *RLI Ins. Co. v. Conseco, Inc.*, 477 F. Supp. 2d 741, 746-47 (E.D. Va. 2007)). "[T]he mere prospect of litigation is not enough." *Henson*, 118 F.R.D. at 587.

The party asserting the work-product doctrine bears the burden to establish that it applies to the document at issue. *See Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 536, 542 (N.D.W.Va. 2000) (citing *Sandberg v. Va. Bankshares, Inc.*, 979 F.2d 332, 355 (4th Cir. 1992)). As with the attorney-client privilege, an assertion that a document is protected by the work-product doctrine must be established by specific facts and not conclusory statements. *See Neuberger*

*Berman Real Estate Income Fund, Inc.*, 230 F.R.D. at 418.  Those facts must establish a "nexus between the preparation of the document and … specific litigation." *Burton*, 175 F.R.D. at 328.

In this case, the Privilege Log entries for the documents withheld by EQT Production do not support the application of the work-product doctrine.  Instead, these entries show that many of these communications were not created in anticipation of litigation, but rather were created in an effort to respond to specific inquiries by DMME, the Board or Reporter Gilbert. See Nos. 182, 184-197, 239-241, 253-262, 264.  West's affidavits also do not support the application of the work-product doctrine.  West's affidavits confirm that many of the withheld emails were an effort to respond to Gilbert's inquiries. West states only that he coordinated the response to Gilbert's inquiries "because the matter involved legal issues … and *the potential* for claims of litigation," and "EQT anticipated that litigation *could* ensue." (Emphasis added.) West also admits that many of the emails in late 2009 and early 2010 regarding royalty calculations and payments were made in an effort to coordinate EQT's response to the Board's efforts to implement uniform royalty reporting requirements.  Based on these facts, I find that EQT Production has failed to meet its burden to show that the withheld emails were created "because of" litigation.

An appropriate order will be entered.

**ENTERED:** this 14th day of September, 2012.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE